[No. 950.]

ANGUS McLEOD, RESPONDENT, v. W. R. LEE ET AL., APPELLANTS.

ORDER GRANTING NEW TRIAL—WHEN IT WILL BE SUSTAINED.—Where, on appeal from an order granting a new trial, the record shows that the motion was made upon two grounds, without showing upon which of them the action was based, the order will be affirmed, if the action of the court can be sustained upon either ground.

IDEM—CONFLICT OF EVIDENCE.—If a new trial is granted upon the ground that the evidence is insufficient to sustain the verdict, the action of the court will be sustained by the appellate court, if there is a substantial conflict in the evidence.

APPEAL from the District Court of the Eighth Judicial District, Esmeralda County.

*A. W. Crocker and Robert M. Clarke,* for Appellants.

*M. A. Murphy,* for Respondent.

By the Court, Leonard, J.:

Respondent brought this action to recover damages alleged to have been sustained by him by reason of an overflow of the waters of Walker river, caused, as is claimed, by the erection and maintainance by appellants of a dam across said river; also, to enjoin appellants from diverting any of the waters of Walker river at any point above the lands of respondent, described in the complaint, and particularly from a certain point and place mentioned and described therein; also, that appellants be commanded and required to remove from across the natural channel of said river the dam constructed by them, and that such requirement be embodied in the final judgment.

Appellants, in their answer, denied all the material allegations contained in the complaint, and alleged that " they constructed the dam and ditch described in plaintiff's complaint, under the provisions of a contract of permission from plaintiff, the conditions of which have all been fulfilled on the part of these defendants, and that they have in no wise exceeded their rights under said contract of permission."

The cause was tried by the court without a jury, and the facts found were wholly in favor of appellants.

Respondent moved for a new trial on the ground that the evidence was insufficient to justify the findings and judgment of the court, and the further ground of newly-discovered evidence. The court ordered a new trial without specifying the ground upon which the order was made, and this appeal is taken from that order.

It is urged by counsel for appellant, that the evidence overwhelmingly supports the findings; that the findings support the judgment, and that the judgment is in accordance with law; that it is reasonable to presume, under the circumstances, that the affidavits in support of the motion for a new trial, setting out what is claimed to be newly-discovered evidence, induced the court to order a new trial; that if those affidavits are eliminated from the record, no legal grounds exist for the order granting a new trial; that the

so-called newly-discovered evidence is cumulative, immaterial, irrelevant, and inconsistent with respondent's testimony given upon the trial, and that, therefore, unless it can be shown that the court erred in the first instance, its judgment must be upheld and the order reversed.

Under the circumstances, we do not deem it necessary to decide whether or not the affidavits are obnoxious to the criticism of counsel for appellant. We think the rule which should govern appellate courts in cases like this is correctly stated in *Lawrence* v. *Burnham,* 4 Nevada, 365. In that case, as in this, the action was tried by the court without a jury; the findings were in favor of the appellant, and judgment was rendered for him. A motion for a new trial was subsequently made and granted. It did not appear upon what ground the motion was granted.

The court said: "When a verdict and judgment are in accordance with the evidence, and there is no substantial conflict in it, upon any material issue, and no error has intervened, the lower court has no right to disturb such verdict and judgment. If there be a conflict in the evidence upon some material issue, or if any substantial error is shown to have been committed, the appellate court will not disturb the order of the court below if it set aside the verdict and judgment; but when nothing of the kind appears in the record to warrant such order, its order will be set aside as unauthorized." In *Oullahan* v. *Starbuck,* 21 Cal. 414, defendant recovered judgment. Plaintiff moved for a new trial upon several grounds, one of which was, "insufficiency of the evidence to justify the verdict." The court granted the motion without indicating the ground upon which it acted. Defendant appealed from the order, and the court said: "It is stated by the appellant's counsel that the only ground upon which the court below based its action in granting the new trial, was a supposed error in its refusing to allow a peremptory challenge to a juror after he had been accepted, though not sworn. We do not doubt that such was the fact, but the record does not show this, and by its contents we must be governed. The record shows that the motion was made on the further

ground that the evidence was insufficient to justify the verdict, and does not indicate upon which of the two grounds the court based its ruling. There was conflicting evidence on the trial, though the evidence which is stated in the record appears to fully support the verdict. It is not enough, however, to authorize any interference with the action of the court below—either in granting or refusing a new trial for alleged insufficiency of the evidence—that an appellate court, judging from the evidence as it is reduced to writing, would have come to a different conclusion."

It is said by counsel for appellant that the findings of a court are as conclusive as the verdict of a jury. We so understand the law. (*State* v. *The Yellow Jacket S. M. Co.* 5 Nev. 421.) The same weight and consideration are always to be given to such findings as to a verdict.

But we understand, also, that a court has the same right to grant a new trial, if upon more mature deliberation it concludes that a material finding is not supported by the evidence, as it has to set aside the verdict of a jury for the same reason; and the same rule obtains in the appellate court in both cases, as to the effect of conflicting evidence upon material issues.

Conceding it to be true, for the purposes of this appeal, that in 1873, prior to the building of the mill in question, and before the digging of the ditch or the erection of the dam, respondent gave Lee general permission and license to build the mill where it now stands, and to take water, as is stated in the first finding of fact; also that a parol license was given to all the appellants to dig the ditch and to erect a dam where they now are; and that such license to the extent then given is irrevocable after execution, under the doctrine stated in *Lee* v. *McLeod*, 12 Nev. 280; still, there was another most material issue in the case, wherein the court found for appellants, and upon which the evidence was extremely conflicting. It was not claimed by either of the appellants—and they were all witnesses—that they ever had permission to erect a permanent dam over eighteen inches or two feet in height. They did testify that they had leave to build a temporary or false dam upon the perma-

nent one, during low water, but they admitted that they were to remove the latter before high water, and claimed to have done so at the time of the overflow, in June and July, 1876, when the damage in question was done. It was in proof that the effect of a dam in Walker river is to cause the deposition of sand and sediment in the river bed until the deposit is raised as high as the dam itself; that, in this case, the sand deposited caused the water to spread out and overflow the banks, and run upon respondent's ranch and crops.

Under such circumstances, it of course became material to ascertain whether or not appellants had performed their agreement in relation to the license claimed, to erect false dams, and in consideration of which such license was given; and in determining that fact nothing was more important than to find whether, at the time of the overflow, the dam was higher than eighteen inches or two feet, and, if it was, whether such additional height caused the whole or any part of the damage sustained.

The court found that appellants had permission to build a permanent dam eighteen inches high, and that, afterwards, they had permission to temporarily raise said dam by means of brush and temporary additions to the extent that, at low stages of the water, it might still remain at the original height, to wit, eighteen inches higher than the bottom of the aperture of the head-gate of their ditch, but that it was agreed that the temporary additions made during low-water seasons should be removed before the high-water season. The court found, further, that at the time of the overflow the dam was no higher than it was at the time of its original construction. Upon the last fact seven witnesses testified positively for respondent and against the finding, while three testified for appellants and in support of the finding.

McLeod testified that on the first of June, 1876, the dam raised the water five feet; that it was of that height during the freshet on the fourth of July, 1876, the time the damage in question was done; that it was solid from bank to bank—not a break in it; that in the spring of 1875, when appellants started to raise their dam, he told them they must not raise it, as it would damage and ruin his ranch;

that he always objected to raising the dam above eighteen inches high, and that was to be temporary.

Garrard, a surveyor, testified that he made a survey of the dam on the twelfth of September, 1876 ; that at that time the east end of the dam was washed away and all the water was running through the break ; that the dam was higher than McLeod's meadows ; that the bed of the stream had been filled up on a level with the top of the dam and ran up the stream to nothing; that it would have taken a four-foot dam above the surface of the water to force a head of water through the box and ditch, because of the presence of sand at the outlet of the box and elsewhere; that the dam caused the overflow.

Snyder testified that he was at respondent's ranch quite immediately after the flood; that he went to the dam and it was solid from one bank of the river to the other; that there was no break in it, and that it was five or six feet high.

Mickey said that on the twenty-eighth of August the dam was three feet above the water level, and that there was no break in it; that he had seen the dam five feet high or more.

Bennett said he saw the dam on the twentieth of August, and the water flowed over it from one bank to the other; that he saw it fifteen or twenty days after, when it was broken; that it was higher before the flood than it was on the twentieth of August, when he measured and found it three feet high above the water level.

Ross saw it on the second of July, when it was solid from bank to bank, and fully five feet high. He saw it again on the fifth of September, when it was solid, but in November he saw it broken.

Dunlap saw the dam in August, and said it was solid and fully five feet high.

Lee, one of the appellants, testified as follows: "McLeod never objected to the building of the dam until 1876. In the spring of 1876 he did object to the building of the dam and told us we must take the top off. Late in the season of 1874, when the river had fallen, and we were engaged in putting on a temporary addition of willows and stakes, in order to keep the water at its original height, he told us

that we would have to take it off before the water raised or
it would overflow his ranch.   We assured him we would do
so.   He made no other complaint or suggestion until in the
spring of 1876, when he told me that the water was raising
and that I had better remove the top dam.   I went up to
the dam and removed it.   A day or two after I learned it
was partly replaced.   I found willows tied upon stakes with
wire, evidently placed there by Indians.   I removed what
I could, and the next day went up with help and a horse and
removed the balance.   This was early in the spring, long
before the highest water in June and July.   *   *   *   At
the time of the high water in the spring of 1876, the east
end of the dam gave way.   We built it up again.   The west
end did not float away.   McLeod was growling about it,
and we pulled some of the top off.   McLeod saw the addi-
tion we had put to it and he said it was too high.   We took
off some of the top in March, 1876.   McLeod said it was
too high and would ruin his ranch, and we took off some in
the middle.   *   *   *   I was up and down the ditch every
day in July, 1876, and saw the water running over the
whole length of the permanent dam, no false dam or brush
on the top of it, and no drift-wood lodged against it.   *   *   *
We did not claim the right to the dam without McLeod's
permission, and when he gave us permission we thought we
had a right to build and maintain the dam.   I do not ac-
knowledge his right to require us to remove it now.   In
September or October, 1873, he (respondent) told me what
he had told the Mills boys.   The Mills boys told me that
they had made arrangements with McLeod to build the
ditch and put in an eighteen or twenty-inch dam.   They
also told me that they were to build the levees.   *   *   *
McLeod did say we might keep a dam in the river eighteen
or twenty inches high; so the Mills boys told me."   The
appellants, Mills, when witnesses, did not claim that they
had leave to put in a dam higher than eighteen inches
or two feet.   They testified that the one they put in raised
the water eighteen inches, and that they never raised the
permanent dam an inch; that they put in false dams in
1874, 1875 and 1876; that the last was taken off in March

or April, 1876.    James Mills said:    "McLeod told us where and of what dimensions to build levees, and we built them to his complete satisfaction, and he so expressed himself.    He at no time requested us to make others, or to do anything except remove the temporary dams during high water, and this we always have done."    Jacob Mills testified substantially like his brother.

There was certainly a greater number of witnesses who testified against than in favor of the finding of the court in relation to the height and condition of the dam at the time of the overflow.    We cannot know that the court did not grant a new trial under the conviction that it had erred in its conclusion upon this material issue.

The order of the court appealed from is affirmed.