JONES & COLLA, Respondents, *v.* O'FARREL, JAMES & CO. JAMES HILL and WM. JAMES, Appellants.

A and B being partners in one firm, the declarations of B are not evidence to show A was a partner in a separate and distinct firm. Neither would the declarations of one who was a general agent for the firm of A and B be admissible for such purposes.

One partner can only bind another in regard to the partnership transactions and not by declarations about other and distinct affairs. Nor can an agent bind his principal except in matters pertaining to his agency.

A party renting property and furnishing material at a stipulated price to a manufacturing company, wherewith to conduct their business, does not thereby become a member of the firm nor responsible for their debts. Nor is such party responsible for the debts of the company contracted in improving the property rented according to the terms of their lease.

A and B being partners in one particular business, A is not bound to notify the world nor any particular person that he is not a partner with B in a new firm into which B has entered with other parties, and which new firm is doing business in a different name from that under which A and B always conducted their business.

APPEAL from the District Court of the Fourth Judicial District, State of Nevada, Washoe County, Hon. C. C. GOODWIN presiding.

The facts of the case are stated in the opinion of the Court.

The counsel on both sides filed elaborate briefs, but as they discuss rather the evidence than the principles of law involved, no abstract can be made from them that will elucidate the principles settled in this decision.

*W. C. Wallace,* Counsel for Appellants.

*North & Harris,* for Respondents.

Opinion of the Court by Justice BEATTY, Justice BROSNAN concurring.

Chief Justice LEWIS, having been counsel in the Court below, did not participate in the hearing.

This was an action brought against Jasper O'Farrel, John James, William H. James, James Hill, J. W. Farrington and E. A. Mier, alleged to be members of and composing the firm of "O'Farrel, James & Co.," to recover the amount of a note executed by that firm, and also an account for articles furnished and charged to the same firm.

There was no defense made by any of the defendants except William H. James and James Hill. They each of them deny by separate answers that they were members of the firm of O'Farrel, James & Co. These were the only issues in the case. The case was tried by a jury on these issues, and the jury found against both the defendants. Various exceptions were taken by the defendants, Hill and William H. James, during the progress of the trial, to the admission of testimony. They both moved for a non-suit at the close of plaintiff's testimony, and both took exceptions to various instructions given and refused. They also moved for a new trial, which was refused by the Court, and this appeal is taken from the order refusing a new trial, and the judgment in the case. The exceptions taken and assignment of errors are very numerous, and several of them well taken.

It will not be necessary to notice them in detail, but we will briefly examine the facts of the case and point out some of the errors committed, and give our views as to the principles which should govern the case in any future trial. In the year 1861, a family, consisting of the father, John James, and several of his sons, among them William H. James, came from California to Washoe County, and commenced the erection of a quartz mill. The business was done in the name of John James, but William H. James was the principal manager, and held a power of attorney from his father. William H. James furnished most of the money to build the mill, and indeed seems to have been the principal owner, in fact; doing

the business in the name of his father to avoid his California creditors.

Before the mill was finished, the James family fell short of funds, and applied to defendant Hill to join them in building the mill.

The application was made by William H. James; but he used his father's name and professed to act as attorney for the old man, but did not conceal the fact that he himself was to be benefited by the mill operations. Hill agreed to take a conveyance of one-fourth interest of the real estate, and become interested to the extent of one-fourth in the building of the mill.

He paid two thousand dollars and took a deed for an undivided fourth of the mill property. When this two thousand dollars was exhausted the mill was still unfinished, and the Jameses applied to Hill to advance the money to finish it. He did so, taking a conveyance of the entire mill property as security for what he had advanced over and above his share.

The mill was finished in the Fall of 1861, and proved a failure. The owners stopped running for awhile. On the 31st of January, 1862, James Hill and John James, calling themselves the proprietors of the Napa Mill, entered into a contract with Farrington & Mier that they (Hill & James) would add twelve stamps to the mill, and lease to Farrington & Mier ground adjoining the mill, whereon to erect other improvements for reducing ores, etc. Hill & James were, when the mill was finished, to run the twenty stamps in crushing ore to be furnished by Farrington & Mier. Farrington & Mier were to pay Hill & James five dollars per ton as compensation for the privileges conferred on them by their lease and for crushing the ores.

The entire power of the mill and the management of the reduction of ores was to be in the hands of Farrington & Mier, except the crushing of the ores in the batteries. That business was to be conducted by Hill & James.

Before Hill & James had made the contemplated improvements (the addition of the twelve stamps), James agreed to become a partner with Farrington & Mier in their contract, thus becoming in effect lessee in a lease which he executed as

one of the lessors. They conducted business in the name of James & Co.

And again, before the twelve stamps were in the mill, Farrington, Mier & James took in with them one Jasper O'Farrel, after which their business was conducted in the name of O'Farrel, James & Co. O'Farrel became a partner in July, 1862. Subsequent to this time the debts sued for in this action were contracted. The note was signed by O'Farrel, with the firm name of O'Farrel, James & Co. The goods sold were charged to O'Farrel, James & Co.

The only evidence, or pretended evidence, tending in the least to show that James Hill was a partner in the firm of O'Farrel, James & Co., were some declarations or statements made by William H. James. These were objected to by Hill's counsel, as hearsay evidence, and received notwithstanding his objection. This testimony seems to have been admitted on this theory by the Court, that William H. James having been either an actual partner in the firm of Hill & James, or else the acknowledged agent of that firm, all admissions he might make as to Hill's being a partner in the firm of O'Farrel, James & Co. would bind Hill. This is certainly not law.

Admitting Wm. H. James to have been a partner in the firm of Hill & James, or the general agent of that firm, all his statements about the business of Hill & James would bind that firm, and of course would bind Hill as far as he was liable for the contracts of that firm. But it is not claimed that Wm. H. James was the agent of Hill in regard to any business except the company business of Hill & James, and his statements could not bind Hill in other matters. He could not bind Hill for the debts of O'Farrel & Co. by saying Hill was a member of that firm. An agent can only bind his principal by declarations or admissions made within the scope of his authority as agent.

It certainly was not within the scope of his authority, as partner or general agent of the firm of Hill & James, to say Hill was a partner in another and distinct firm. This erroneous judgment of the Court below as to Hill's being bound by the statements of W. H. James, seems to have caused most, if not all, the errors committed by the Court in the trial of this case.

There are other points insisted on by the respondents, which we will notice, to prevent future confusion on the trial of the cause.    It is insisted that as the mill of which Hill was the part or sole owner, was the capital or property with which O'Farrel, James & Co. did business, that, therefore, Hill had capital invested in business with that firm, and was responsible for their debts.

Upon the same principle every landlord who rents a house to a mercantile firm would be responsible for the debts of that firm, because the landlord has property which the firm uses in their business.    Such a proposition is absurd, and every one must see its absurdity when put in this form.

Yet that is substantially the proposition in this case.    A part of Hill's mill property is rented by O'Farrel, James & Co.    A part of it is used by Hill & James to crush rock for O'Farrel, James & Co., the latter firm paying Hill & James five dollars per ton for all rock crushed.    How can this make Hill &'James responsible for the losses of O'Farrel, James & Co. ?    The business of the two firms is entirely distinct, and one in no way responsible for the other.    John James, and perhaps Wm. H. James, are members of both firms.    As such they may be responsible for the debts of both firms, but James Hill, because he is a partner of one or both the Jameses in the firm of Hill & James, is not therefore responsible for their debts in the firm of O'Farrel, James & Co., with which he had no connection.    Nor is Hill responsible for the debts of O'Farrel, James & Co., because that firm contracted their debts, or a part of them, in putting improvements on Hill's property, in accordance with the conditions of their lease, as counsel seem to argue.

A landlord who leases property with a condition that certain improvements are to be made in lieu of rent, is not bound for the debts of his tenant contracted in making those improvements.

Finally, it is contended that Hill was one of the parties who built the Napa mill.    That the firms of Farrington & Mier, James & Co., and O'Farrel, James & Co., were all firms formed for the purpose of making additions and improvements to and on said property and carrying on business in connection therewith.    That this business was so nearly connected with the

business of Hill & James in building the mill, that it became the duty of Hill to notify all the world that he was not a partner in the firm of O'Farrel, James & Co.

Under many circumstances it is necessary for a retiring partner to give notice of his withdrawal from a trading or mercantile firm, to avoid responsibility for debts contracted after his connection with the firm has ceased; but we cannot conceive of a case where it would be necessary for a man to give notice he was not a member of a firm with which he had never been connected.

Farrington & Mier took a lease from Hill & James in the first place; certainly it was not necessary for Hill to say he was not a partner with his tenants. Afterwards John James, or the two Jameses, perhaps, went into partnership with Farrington & Mier, and their business was conducted in the name of James & Co. Hill's name did not appear in the firm, and he is not shown to have had any knowledge of the formation of that firm.

Upon what principle could he be required to give notice that he was not a member of it? The mere fact that he had been a partner with James in another business, did not make it Hill's business to watch James and notify the world that he was not his partner in any new business connection he might form. We have noticed these points because they were insisted on by respondents, and because we are unable to determine from the instructions given and refused by the Court, how far it may have been misled by these views of counsel. The Court erred in allowing the statements of Wm. H. James to be given in evidence against Hill. It erred in refusing the motion for non-suit, as to Hill. It erred in the instruction given on its own motion, and erred in refusing most of the instructions asked by defendant Hill's counsel.

The judgment of the Court below is set aside and a new trial ordered.