[No. 823.]

W. R. LEE ET AL., APPELLANTS, *v.* ANGUS McLEOD, RESPONDENT.

PAROL LICENSE, WHEN IRREVOCABLE.—A parol license to erect a dam upon another's land for the purpose of running a flouring-mill, is irrevocable after the party to whom the license is given has executed it by erecting the mill, or otherwise expending money upon the faith of the license.

IDEM—STATUTE OF FRAUDS.—The expenditure of money in consequence of the license, has the effect of turning such license into an agreement that will be enforced in equity. The execution of the parol license supplies the place of a writing, and takes the case out of the statute of frauds.

PLEADINGS, WHEN OBJECTIONS TO, SHOULD BE MADE IN THE COURT BELOW.— An objection that evidence tending to establish a parol license ought not

to have been admitted because the facts necessary to create a contract, or constitute an equitable estoppel, were not specially pleaded, will not be considered on appeal unless the objection was properly made in the court below.

APPEAL from the District Court of the Eighth Judicial District, Esmeralda County.

This action was brought by W. R. Lee, James Mills and Jacob Mills, against Angus McLeod, to recover damages for an alleged unlawful diversion of the waters of Walker river, and to enjoin the defendant McLeod from diverting the same to the injury of plaintiffs.

It appears from the testimony that the plaintiff Lee is a miller; that in 1873 he had frequent conversations with the defendant McLeod regarding the advisability of building a flouring-mill; that McLeod frequently asserted that it would be of great advantage to him and to the community, and would be a paying operation, and generally advised and requested plaintiff Lee to build such a mill; that McLeod repeatedly stated that he would give the plaintiff a mill-site anywhere on his land, and would also give the use of the water from Walker river at any place where it run through his land and from certain ditches which he owned. All the people in Mason's valley made the same offer. Plaintiff Lee thereafter selected a mill-site off from the land of defendant, and entered into an agreement with his co-plaintiffs, who were farmers, to construct a ditch and build a dam so as to divert the waters of Walker river to said mill-site, with the understanding that if there was water enough for both, both should have it, otherwise, Lee should take it in the winter and his co-plaintiffs in the summer. The ditch and dam were built, the dam being nearly all on McLeod's land. McLeod gave plaintiffs permission to take the water at the point selected by plaintiffs, and to build a dam that would raise the water eighteen inches, upon condition that a levee of corresponding height should be built. The dam was built so as to raise the water over two feet high; McLeod at first objected to this, but upon the promise being made upon the part of plaintiffs that they would lower the dam, when the water raised, he consented. While the dam was

being built McLeod frequently passed where the plaintiffs were at work, and never made any objections except as above stated; he authorized plaintiffs to take material from his ranch to make the dam, and frequently gave his assent to what had been done. After the dam was completed and levee built he assured plaintiffs that they had fully complied with his requirements. After the ditch and dam were finished and after the flouring-mill had been erected, McLeod informed plaintiffs that he wished to dig a cut across his own land for the purpose of taking a part of the water above the dam and emptying it into the river below the dam, for the purpose of creating a counter current, saying that it would not deprive plaintiffs of the use of the water; that if it did he would fill it up, as he only wanted a small part of the water. Upon this assurance, one of the plaintiffs helped dig the cut. Afterwards, without the consent of plaintiffs, the cut was made deeper and the plaintiffs were thereby deprived of the water.

This testimony was all admitted without objection. During the trial plaintiffs offered to prove the value and cost of the ditch, dam and flouring-mill constructed by them, with the view of showing to what extent they had complied with their part of the contract with defendant. Defendant objected to this evidence, upon the ground that it was irrelevant and immaterial to the issue. The court sustained the objection, and plaintiffs excepted.

This appeal is taken from the order and judgment of the district court granting a nonsuit.

*T. W. W. Davies,* for Appellant:

I. The statute of frauds requires all agreements concerning land to be in writing; but this statute will never in equity be allowed to operate as a protection to fraud, and for the purpose of showing that a fraud has been, or is sought to be committed, parol evidence will be admitted even against the words of the statute.

Where there has been such a part performance of a verbal contract by plaintiffs as to put them into a situation which would operate as a fraud upon them unless the ver-

bal agreement should be enforced, a specific performance of the contract will be decreed.

The specific performance asked by plaintiffs is to compel defendant to comply with his part of the contract, and permit them to enjoy the right of taking and using the water granted by him to them in the beginning, and to desist from malicious interference with, and destruction of, their vested rights. (*Tohler* v. *Folsom*, 1 Cal. 207; *Johnson* v. *Rickett*, 5 Cal. 513; *Arguello* v. *Edinger*, 10 Cal. 150; *Hidden* v. *Jordan*, 21 Cal. 92; *Farley* v. *Vaughn*, 11 Cal. 227.)

II. The defendant, after standing by and seeing plaintiffs perform work, construct the dam and ditch, expend large sums of money in the erection of a mill, offers all manner of assistance in the enterprise of plaintiffs; consults with them about making his "cut-off," promising to close it if it in any wise injured plaintiffs' ditch and water privilege; acquiesces in all the acts of plaintiffs, both tacitly and openly, and then by repudiation of his agreement and acquiescence, seeks to destroy the vested rights of plaintiffs. He is estopped from denying plaintiffs' rights. (Smith's Lead. Cases and authorities cited.)

*Ellis & King*, for Respondent:

I. The court did not err in excluding the testimony as to the cost of the ditch, dam and mill, because it was offered solely for the purpose of showing how far the plaintiffs had complied with some imaginary contract which is not pleaded.

II. The plaintiffs can only recover in this case upon the theory that they owned a usufructuary right to a portion of the water of Walker river, and that the defendant had deprived them of the enjoyment of such right. To show this, they must show that they had actually appropriated the water rightfully as against the defendant, or that they had contracted with the defendant for the use of the water according to law, and for a sufficient consideration passing to the defendant, from, or on behalf of the plaintiffs.

III. The plaintiffs failed to show any contract by which McLeod parted with a portion of his estate. We maintain that McLeod is a riparian proprietor, and has the rights as

against the plaintiff to the full flow of the stream; that there was no contract; that there was no consideration to support any contract. (Smith on Con., "Consideration;" that the pretended contract is clearly within the statute of frauds. (Smith on Con. 119, and cases cited; *Stevens* v. *Stevens*, 11 Met. 251; *Thompson* v. *Gregory*, 4 John. 81; *Carter* v. *Harlan*, 6 Md. 20; *Moulton* v. *Faught*, 41 Me. 298.)

That if there was a contract, it has been violated by the plaintiffs in rising and seeking to maintain a dam three feet high, when by their testimony they only had permission to build it eighteen inches.

If such is the case, McLeod clearly has the right to revoke his license and to defend this action. And the taking of counter steps to protect his own land from overflow, by making the cut as against the raised dam, was legitimate and amounted to a revocation of the license. This was only a license; the expenditure of money makes no difference. (Wash. on Ease. and Serv. Ed. 1873, 5, 6, 24, 26, 27.)

By the Court, HAWLEY, C. J.:

A parol license to erect a dam upon another's land, or to convey water from a stream running through the land of another, for the purpose of erecting and conducting a flouring-mill, is, in our opinion, irrevocable after the party to whom the license is given has executed it by erecting the mill, or otherwise expended his money upon the faith of the license.

This principle is very clearly stated in *Rerick* v. *Kern* (14 Serg. & Rawle, 267), where the court held that a parol license, given without consideration, to use the water of a stream for a saw-mill, in consequence of which the licensee goes to the expense of erecting a mill, the license cannot be revoked at the pleasure of the licensor, and that the licensee could maintain an action against the licensor for a diversion of the water to his injury. Gibson, J., in delivering the opinion of the court, said: "A license may become an agreement on valuable consideration, as, where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improve-

ments or invested capital in consequence of it he has become a purchaser for a valuable consideration. Such a grant is a direct encouragement to expend money, and it would be against all conscience to annul it as soon as the benefit expected from the expenditure is beginning to be perceived." (2 Am. Lead. Cases, 734.) The principle that expending money or labor in consequence of a license to divert a water-course, or use a water-power, in a particular way, has the effect of turning such a license into an agreement that will be enforced in equity, has been frequently announced by the courts. In all such cases the execution of the parol license supplies the place of a writing, and takes the case out of the statute of frauds. (*Woodbury* v. *Parshley*, 7 N. H. 237; *Snowden* v. *Wilas*, 19 Ind. 14; *Stephens* v. *Benson*, Id. 369; *Lane* v. *Miller et al.*, 27 Ind. 537; *The Raritan Water Power Co.* v. *Veghte*, 21 N. J. Eq., 463; *Rhodes* v. *Otis*, 33 Ala. 578; *Campbell* v. *McCoy et al.*, 31 Penn. 264; *Prince* v. *Case*, 2 Am. Lead. Cases, 760–1; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 108.)

The rule applicable to such cases is also acknowledged in cases where a parol license had been given to erect party walls. (*Wickersham* v. *Orr*, 9 Iowa, 259; *Russell* v. *Hubbard et al.*, 59 Ill. 340.)

There are several very respectable authorities which hold a contrary doctrine, but we think the rule as announced in the authorities we have cited is founded in better reason, and fully accords with our views in relation to this subject.

There was some evidence admitted without objection which tended to prove an executed parol license. Respondent claims that the facts necessary to create a contract or constitute an equitable estoppel were not specially pleaded, and that no evidence of this character ought to have been admitted. This objection does not appear to have been made in the court below, and it is therefore unnecessary to decide the question as to the sufficiency of the pleadings. The plaintiffs will, if they so desire, be allowed, upon proper motion, to amend their complaint, so as to avoid any objection of this character upon another trial.

As the testimony in this case tended to prove that plaint-

iffs were induced to build and had erected a flouring-mill, and constructed a ditch, relying upon a parol license given by the defendant and others to erect a dam and divert the waters of the Walker river from the natural channel of said stream, for the purpose of operating said mill, and that defendant had, by digging a deep cut across his own land, diverted the water of said stream away from the plaintiffs' dam, to their injury, it follows that the court erred in granting a nonsuit.

The judgment of the district court is reversed and cause remanded for a new trial.