[No. 1105.]

ANGUS McLEOD, Respondent, *v.* W. R. LEE et al., Appellants.

Judgment in Bar—Conclusive.—A judgment of a court of competent jurisdiction, between the same parties, and upon the same issues, is as a plea, a bar, or as evidence conclusive not only of the right which it establishes, but of the facts which it directly decides.

IDEM.—Where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judictum*, and the former judgment in such a case is conclusive between the parties.

IDEM—PLEADINGS—IDENTITY OF DAM.—EVIDENCE.—Appellants claimed that the issues in the two suits were upon different subjects, because the respective complaints described the location of the dam in question at different points, and that the court erred in admitting evidence as to the identity of the dam: *Held,* upon a review of the pleadings and evidence, that the identity of the dam was really admitted by the pleadings; that the court did not err in admitting evidence as to the identity of the dam; that this evidence was admissible, not for the purpose of varying, controlling or contradicting the record, but for the purpose of more clearly showing that the dam in question in this suit was the same dam that was in issue in the former suit.

ORDER OF ADMITTING TESTIMONY.—After plaintiff had testified as to the identity of the dam, defendants asked leave of the court to contradict him. The court said: "You can when you open your case; but not now:" *Held,* that this ruling was not prejudicial to defendants.

IDEM—REOPENING THE CASE.—Plaintiff, in the opening of his case, introduced two witnesses who testified that the dam, erected by defendants, was the cause of the overflow upon plaintiff's land. When defendant offered testimony upon this point, the court first ruled that the question had been adjudicated in the former suit, and that the testimony was inadmissible. The court subsequently changed this ruling, and the testimony of defendant was admitted. The court then, upon motion, allowed plaintiff to reopen the case, and to submit further evidence upon this point: *Held,* that defendants were not prejudiced, and that the court did not abuse its discretion in reopening the case.

IDEM—DISCRETION OF COURT.—Whether a plaintiff will be permitted to reopen his proof upon any particular point, is a question which rests very much in the discretion of the court. When the plaintiff is acting in good faith, and the ends of justice require it, the case may be reopened.

OBJECTIONS MUST BE MADE IN DISTRICT COURT.—Objections to the ruling of the court, which were not made in the court below, will not be considered on appeal.

FINDINGS OF COURT—STATEMENT NOT CONTAINING ALL OF THE EVIDENCE—PRESUMPTIONS.—Where the statement on motion for a new trial does not purport to contain all the evidence, the presumption is that there was sufficient evidence introduced at the trial to sustain the findings of the court.

OMISSION OF COURT TO FIND CERTAIN FACTS.—If parties desire a specific finding upon any particular fact, not found by the court, they must ask the court for such finding, otherwise they cannot complain.

DECLARATION OF PARTNER—WHEN NOT ADMISSIBLE.—A witness stated that he was told that one S., when making certain declarations as to the cause of the overflow on plaintiff's land, "was the partner in the ranch at the time:" *Held,* that the declaration of S. was inadmissible; that it was not shown to have been made with reference to any matter within the scope of the partnership business, and that it was too vague and indefinite to bind the plaintiff.

TESTIMONY AND OPINION OF WITNESSES AS TO CAUSE OF OVERFLOW—MEASURE-
MENTS:—*Held*, upon a review of the evidence, that the observations, judg-
ments and opinions of witnesses acquainted with the premises, as to the
cause of the overflow, were as certain and direct as the measurements that
were taken upon the ground.

APPEAL from the District Court of the Third Judicial Dis-
trict, Esmeralda County.

The facts are stated in the opinion.

*Bennett & Reddy* and *A. L. Greeley*, for Appellants;

I. The evidence is insufficient to justify the decision of the
court. (Testimony reviewed.)

II. The court erred in overruling the objection of defend-
ants to the admission of the judgment roll and findings of the
jury in the case of *Lee et al.* v. *McLeod*, because it appeared
upon the face of the complaint and answer in that case, that
the adjudication was upon an entirely different subject. The
description in the complaint in that action was perfectly clear
and certain. One of the objects of inspecting a record is to
determine from it whether the premises litigated in the former
action are the same as those involved in the pending suit. If
the record is clear and certain as to the matter, of course no
parol testimony can be introduced for the purpose of varying,
controlling or contradicting that record. And the court is not
to decide the question from an inspection of one particular
paper, but should examine the entire record, and determine,
if that is possible, what property or subject was actually liti-
gated between the parties. Until the court can say that it
has inspected the entire record, and is unable to determine
with certainty, from the record, what the subject of litigation
was between the parties, it should resort to parol testimony.
Respondent claims, however, that inasmuch as it was alleged
in the supplemental complaint in this action that the dam
mentioned in the former suit was identical with the one men-
tioned in this, and as defendants failed to specifically deny
that allegation, that it must be regarded as admitted as a fact
in the case. That might be true if plaintiff had refrained
from introducing evidence at the trial, but he cannot treat it

as a fact denied at the trial, give evidence upon it as he did, and then, for the first time on appeal, say the fact was not denied below. (*Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271, 292; *Gordon* v. *Clark*, 22 Cal. 533; *Racouillat* v. *Rene*, 32 Cal. 450; *White* v. *San Rafael R. R. Co.*, 50 Cal. 417; *Cave* v. *Crafts*, 53 Cal. 135.)

III. The court erred in refusing the request of defendants to be allowed to contradict McLeod's testimony as to the identity of the dams in question. The court should have heard all of the evidence on both sides as to the identity of the issues, and if it found that the issues were the same in the two cases, with the exception of the amount of damages, then the evidence should have been limited to the question of damages. That would not be trying the case by piecemeal, but according to the ordinary rules of practice, and in a clear and logical way. Each party had the right to know at this stage of the proceedings whether he was to try his case on the merits, or whether it was to be determined according to the former adjudication. The object of pleading, and the object in establishing rules of practice, are to narrow the issues, and, as far as practicable, to enable the parties to understand before the trial begins what the issues are, and, in due time before called on to meet the issue, to know what it is. It is a substantial right and one which the courts have always endeavored to maintain and protect. It is essential to the proper dispatch of business and the orderly administration of justice that the court and the parties should understand in advance what they are to try. (*Gay* v. *Winter*, 34 Cal. 160; 1 Phill. on Ev. 3, 6.)

IV. The court erred in deciding that the height and character of the dam in June and July, 1876, had been adjudicated in the case of *Lee et al.* v. *McLeod*. The finding of the jury as to the height and character of the dam in the spring of 1875, in the spring of 1876, and in June and July, 1876, were wholly immaterial and outside the scope of the pleadings, and, in fact, contrary to the allegation in the answer last above referred to. (Wells on *Res. Adj.*, secs. 200, 290, 294.) The court seems to have been of the opinion that because the defendant alleged that the plaintiffs constructed their dam six feet high, on or about the fourth day of August,

1876, that it must be held to be at all times prior, six feet high. To hold that the dam, having been shown to have been once six feet high, that it continued till shown to the contrary, would be supported with some showing of reason, but to hold that because it was that high on the fourth day of August, 1876, that it always had been, was an absurdity on its face. A judgment is binding and conclusive upon the points decided and within the issues made by the parties, and cannot be binding or conclusive upon matters anterior to the time covered by the issues. If the time included within the issues in the former case was not the same, but subsequent to the time in the present suit, then they are not the same issues.

V. The findings of the jury as to the height and character of the dam are void for uncertainty. They were too indefinite to be regarded as *res adjudicata*. (2 Best on Ev. 591; Freeman on Judg., sec. 50 c.) Probably no judgment as to *reasonable time* can ever become *res adjudicata* on account of the indefiniteness of the expression. (Wells on *Res Adj.*, sec. 398; *Sage* v. *McAlpin*, 11 Cush. 165.) The findings of a jury do not settle any question upon which it may pass, unless they also pass into the judgment. (Wells on *Res Adj.*, sec. 296.) These findings did not pass into judgment, because the judgment expresses on its face the reasons for giving judgment against the plaintiffs and in favor of defendant. All the findings of the jury necessary to support this judgment are presumed to be embodied in it, and such as were not necessary are not within it. At all events, it is only such as were necessary to enable the court to render such judgment that are conclusive and binding. (Bigelow on Estoppel, 82.)

VI. The court permitted the plaintiff's counsel to inquire if there was not a dam in the river at the point mentioned, and should, therefore, have allowed the defendants to pursue the inquiry. (*Megerle* v. *Ashe*, 33 Cal. 83; Starkie on Ev. 342.) Common sense and common justice would seem to require this to be the rule. Many of the authorities hold that neither party should be permitted to give evidence upon a point adjudicated, and that the adjudication is binding alike upon the court and both litigants. (Freeman on Judg., sec. 284, p. 325.)

VII. The testimony of Mr. Snyder should have been admitted. The declarations of a partner during the existence of the partnership concerning matters pertaining to the business and the manner of conducting the business of the firm, are binding upon the members of the firm and those who succeed to the interest of the firm.    (1 Green. on Ev., sec. 177; Par. on Part., sec. 192; *Jones* v. *O'Farrell*, 1 Nev. 354.)

*A. C. Ellis, M. A. Murphy* and *T. H. Wells*, for Respondent:

I. The decision of a court of competent jurisdiction directly upon the same point, is conclusive where the same point comes again in controversy between the same parties directly, collaterally or incidentally.    (*Croudson* v. *Leonard*, 4 Cr. 436; *Thatcher* v. *Gammon*, 12 Mass. 268; *Baxter* v. *New England M. I. Co.*, 6 Mass. 279; *Smith* v. *Whiting*, 11 Mass. 446; *State* v. *Ramsburg*, 43 Md. 325; *Bruner* v. *Ramsburg*, 43 Md. 560; *Aurora City* v. *West*, 7 Wall. 82; *Kilheffer* v. *Herr*, 17 S. & R. 319; *Marsh* v. *Pier*, 4 Rawle, 273; *Bissell* v. *Kellogg*, 60 Barb. 617.)

II. A decision upon any material point is conclusive in a second suit between the same parties, depending upon the same question, although the subject matter of the second action be different.    (*Sherman* v. *Dilley*, 3 Nev. 21; *State* v. *C. P. R. R. Co.*, 10 Nev. 79; *Doty* v. *Brown*, 4 N. Y. 71; *Spencer et al.* v. *Dearth*, 43 Vt. 104; *Smith et al.* v. *Kernochen*, 7 How. 198; *Gardner* v. *Buckbee*, 3 Cow. 120; *Beebe* v. *Elliott*, 4 Barb. 457; *Bouchaud* v. *Dias*, 3 Denio. 238; *Burt* v. *Sternburgh*, 4 Cow. 559; *State Bank* v. *Rude*, 23 Kan. 143; *Clark* v. *Rowling*, 3 N. Y. 220.)

III. A judgment is conclusive upon questions involved in the action and upon which it depends, or upon matters which, under the issues, might have been litigated and decided in the suit.    (*Shepardson* v. *Cary*, 29 Wis. 34; *Chesapeake* v. *Gittings*, 36 Md. 299; *Rogers* v. *Higgins*, 57 Ill. 244; *Phelan* v. *Gardner*, 43 Cal. 306; *Bates* v. *Spooner*, 45 Ind. 489; *Petersine* v. *Thomas*, 28 Ohio St. 596; *Bettys* v. *Chicago & S. R. Co.*, 43 Iowa, 602; *Thompson* v. *Myrick*, 24 Minn. 4; *Barrett* v. *Failing*, 8 Or. 152.)

IV. Parol evidence is admissible in a second suit for the purpose of showing what questions were involved in the first action, and that the premises in question were the same in both. (*Sherman* v. *Dilley*, 3 Nev. 21; *Terry* v. *Berry*, 13 Nev. 523; *Burt* v. *Sternburgh*, 4 Cow. 559; *Doty* v. *Brown*, 4 N. Y. 71; *Bissell* v. *Kellogg*, 60 Barb. 627; *Wood* v. *Jackson*, 8 Wen. 44; *Young* v. *Rummell*, 2 Hill, 480.) If the matter in controversy was tried in the former suit, and does not appear of record, the proper course is to give the record in evidence and then prove by parol that the matter did arise and was tried upon the pleadings in the records. (*Beebe* v. *Elliott*, 4 Barb. 457; *Bouchaud* v. *Dias*, 3 Denio, 238; *Russell* v. *Place*, 4 Otto, 606; *Davis* v. *Brown*, 4 Otto, 423; *Tutt* v. *Price*, 7 Mo. App. 194; *Supples* v. *Cannon*, 44 Conn. 424.)

V. The judgment in the case of *Lee* v. *McLeod* was a final judgment. There is no difference between a decree in chancery and a verdict at law of dismissal. Either constitute a bar to a future action. (1 Comp. L. 1212; *Phillpots* v. *Blasdel*, 10 Nev. 23; *Merritt* v. *Campbell*, 47 Cal. 545; 7 How. 217; *Schoch* v. *Foreman*, 3 Brews. 157; *Newark* v. *Newark*, 22 Mich. 292; *Lewis* v. *Lewis*, 106 Mass. 309; *Swift* v. *Allen*, 55 Ill. 303; *Gates* v. *Preston*, 41 N. Y. 113; *Howell* v. *Goodrich*, 69 Ill. 556; *Ogsbury* v. *La Farge*, 2 N. Y. 113; *Bouchaud* v. *Dias*, 3 Denio. 238; *Cochran* v. *Couper*, 2 Del. Ch. 27; *Blackinton* v. *Blackinton*, 113 Mass. 231.)

VI. When a court has jurisdiction of the subject matter and the parties, its judgment, although irregular in form or erroneous, are conclusive as long as unreversed, and cannot be collaterally attacked. (*Kern* v. *Strasberger*, 71 Ill. 303; *Willis* v. *Ferguson*, 46 Tex. 496; *Lancaster* v. *Wilson*, 27 Gratt. 624; *Gunn* v. *Plant*, 4 Otto, 664; *Moore* v. *Ware*, 51 Miss. 206.)

No defense can be admitted which existed prior to the rendering of the judgment. (*Thatcher* v. *Gammon*, 12 Mass. 268; *Smith* v. *Whiting*, 11 Mass. 446.) When a party presents his pleadings before a court he must urge all the reasons which then existed for its support. After a determination of the suit a party cannot have the case reopened for the purpose

of being heard upon any reasons which before existed and
were within his knowledge, or sue upon demand, or a cause of
action which existed at the time of the commencement of the
first action. (*Bates* v. *Spooner*, 45 Ind. 489; *Rogers* v.
*Higgins*, 57 Ill. 244; *Gates* v. *Preston*, 41 N. Y. 113;
*Reformed Protestant Church* v. *Brown*, 54 Barb. 199; *Rosen-
mueller* v. *Lampe*, 89 Ill. 212.)

By the Court, HAWLEY, J.:

The action of *Lee et al.* v. *McLeod*, 12 Nev. 280, was
brought to recover damages for an alleged unlawful diversion
of the waters of Walker river by defendant, on or about the
fourth of August, 1876, and to enjoin him from diverting the
same to the injury of plaintiffs.

The right of plaintiffs to erect and maintain a dam in the
river was dependent upon a parol license claimed to have been
given by the defendant, and, when the cause was tried upon
its merits, a judgment was rendered in favor of defendant, and
this judgment was affirmed by this court. (15 Nev. 158.)

The present action was instituted, during the pendency of
the other suit, by the plaintiff (defendant in the former
action), against the defendants (plaintiffs therein), to recover
damages for the destruction of his crops and injury to his lands
by an overflow of the waters of Walker river, in the months
of June and July, 1876, alleged to have been caused by reason
of the wrongful erection and maintenance of the dam by the
defendants, and for an injunction. (14 Nev. 398.)

In the case of *Lee et al.* v. *McLeod*, there were thirty-three
special questions submitted by plaintiffs, and thirty-five by
defendant. The jury was unable to answer several of the
questions, but all that were answered were favorable to the
defendant and justified the judgment rendered therein. The
jury, among other things, decided "that the defendant McLeod
gave the plaintiffs permission to erect a temporary dam of
eighteen inches in height, or sufficient in extent and size to
back the water of the river eighteen inches;" that "the under-
standing was that the plaintiffs should construct a temporary
dam of brush, etc., that would wash out at any freshet;" that
in case of high water and danger of the defendant's ranch

being overflowed, "the plaintiffs should cut the dam, in case it was not washed out;" that at no time between the spring of 1875 and the fourth day of August, 1876, "was the dam in question less than three feet in height;" that in the spring of 1875 it was about five feet high, and in the spring of 1876 from four to five feet; that the deposit of sand in plaintiffs' ditch was occasioned by the dam; that the dam caused "unusual deposits of sand in the channel of Walker river, above said dam," and thereby occasioned "an overflow of said defendant's land;" that "the defendant was the owner in fee of the land described in the answer."

After the trial and rendition of judgment in *Lee et al.* v. *McLeod*, the plaintiff in this action filed a supplemental complaint alleging the trial and decision in the former action, and, among other things, averred "that the issues presented in that case were the same as presented in this case, with the single exception of the amount of damages;" that the parties to said action * *. * were the same parties in this case; that "the dam and ditch concerning which said adjudication was had and made in the findings and judgment in said action * * * were, and are, the same dam and ditch as are mentioned and described in the supplemental answer in this cause and in the complaint in this action;" that it was adjudged and determined in said action "that the said dam * * * was the cause of the overflow of the plaintiff's land described in the complaint herein," and that "the plaintiff was the owner of the real estate described in the complaint herein." It is further alleged that "the time referred to in the complaint in this action, and in the amended answer herein, covers the same period of time as mentioned in the * * * pleadings in said cause."

In their answer to this supplemental complaint the defendants denied that the issues in the two suits were the same ; denied "that there was any adjudication whatever concerning any dam or ditch belonging or claimed by the defendants in this action;" denied "that any question involving said dam or ditch, or defendants' title thereto, was raised in said action or put in issue therein;" denied that it was adjudicated or determined therein "that the said dam was the cause of the

overflow of plaintiff's land described in the complaint herein;" denied that it was adjudged that plaintiff "was the owner of the real estate described in the complaint herein;" and alleged "that in the said cause the issues presented in this cause were not raised, and were not within the scope of the pleadings in this action."

1. The general principle that a judgment of a court of competent jurisdiction between the same parties and upon the same issues is as a plea, a bar, or as evidence conclusive, is too well settled to require discussion. Such a judgment is not only conclusive of the right which it establishes, but of the facts which it directly decides.

Whenever a cause has been once fairly tried and finally determined, by a competent tribunal, the same questions, as between the same parties, ought not to be tried over again. They should be considered as forever settled.

This rule is necessary for the repose of society. It is in the interest of the public that there should be an end of litigation.

It is easy to understand the beneficial results which flow from a strict observance of this principle, and to realize the injury which might arise by any relaxation of the rule. In a proper case for its application, courts of justice ought not to permit the rule to be called in question by any supposed hardship which might exist in any particular case, but should inflexibly adhere to it, regardless of consequences.

In the present case it is argued that the issues in the former suit were upon an entirely different subject, and this argument is sought to be maintained principally upon the ground that the original complaint in each of these actions describes the *locus in quo* of the dam in question at different points. If there were, in fact, two dams in Walker river, each located as described in the respective complaints, the argument would have great force. But the evidence shows that there was but one dam. The plaintiff testified "that he knew the dam and ditch described in the pleadings in the case of Lee, Mills and Mills against McLeod, and also the dam and ditch described in this case, and that it is the same dam and ditch described in the pleadings in both cases."

This testimony is not controverted by the record; but, in

this connection, it is earnestly contended that the court erred in permitting any testimony relative to the identity of the dam, because there is no ambiguity or uncertainty in the descriptions in the pleadings.

We are, however, of opinion that the ruling of the court, in admitting this testimony, was not prejudicial to the defendants.

In the action of *Lee* v. *McLeod*, the point where the dam was erected in Walker river was described in the original complaint as being " at the quarter section corner, between sections 11 and 12, township 13 north, range 25 east, Mount Diablo base and meridian."

In this action it is described, in the original complaint, as being " at or near the southeast corner of the northeast quarter of the northeast quarter of   *   *   *   section 10, and on the section line between sections 10 and 11 of said township and range."

These points are about one mile apart.

In an amended complaint—erroneously designated as a supplemental complaint—filed in the action of *Lee* v. *McLeod* (pursuant to a suggestion of this court in 12 Nev. 285), the site of the dam is located " on said Walker river, at or near where the old Nichols ditch receives water."

In an amended answer to plaintiff's complaint in this action the defendants aver that, in pursuance of the parol license given by McLeod, they " commenced the excavation of a ditch from said mill *to the dam described in plaintiff's complaint, and erected said dam.*"

Even upon these proceedings we think the court would have been justified in declaring that the dam in question in both suits was the same.   The plaintiffs in *Lee* v. *McLeod* claimed the right to construct a dam in Walker river by virtue of a parol license given to them by McLeod, and they alleged and proved in that action that, in pursuance of such license, they constructed the dam on or about the thirtieth of November, 1874, for the purpose of diverting the water of the river into their ditch.   The dam described in the complaint in this action is alleged to have been erected by defendants " on or about

the thirtieth day of November, A. D. 1874," for the purpose
of diverting the water of the river through the ditch con-
structed by defendants at that time.    The parol license was
only given for the erection and maintenance of one dam, and
that one was to be used to divert the waters of Walker river
into and through the ditch constructed by Lee and the Mills
brothers.

From the very nature of the case this must have been the
same dam concerning which the litigation was had in the for-
mer action.    The facts upon which the parol license was
claimed were precisely the same in both actions.    There was
but one dam to which the facts, as alleged, could possibly
apply.

Moreover, there was no specific denial of the allegation in
the supplemental complaint in this action that the dam men-
tioned in the former suit was identical with the one mentioned
in this.    The plaintiff might therefore, have safely rested
upon the pleadings, and claimed that the identity of the dam
was an admitted fact in the case.    The whole theory of the
answer to the supplemental complaint is evidently based upon
the fact that the dam is not described in the original complaint
in this action as being at the same point as in the complaint
in the former action, and not upon the ground that there were
in fact two separate and distinct dams.    But, inasmuch, as
the precise location of the dam in question was differently
described in the various pleadings it was not erroneous to
admit parol evidence to show that the dam and ditch referred
to, in all the pleadings, were the same.    This testimony was
admissible not for the purpose of varying, controlling or con-
tradicting the record, but for the purpose of more clearly
showing that the dam in question in this suit was the same
dam that was in issue in the former action.

2.  After McLeod had testified as to the identity of the dam
the defendant asked leave of the court to contradict him.

The court said :  " You can when you open your case, but
not now."    It is true that the court might have heard all the
evidence on both sides as to the identity of the issues and
thereafter limited the evidence to the questions that had not
been litigated in the former action.    This is the usual and we

think it is the proper course to pursue. We are, however, unable to see how the defendants could have been prejudiced by the rule adopted by the court. They had the right to offer evidence contradicting the plaintiff upon this point when they opened their case. They were not deprived of this right by any of the subsequent rulings of the court.

The questions propounded to the witness Lee, which the court held were settled in the former suit, were: 1. " Was there any dam in Walker river, constructed by yourself and co-defendants, at the time Mr. McLeod's * * * lands were overflowed?" 2. " Was there, or not, any dam in the river at the point named during the period from the fifteenth of June up to the fourth or fifth of July, 1876?"

It is claimed that by these rulings the court expressly ruled out the testimony upon every point, " except the cause of the overflow and on the question of damages;" and that it would have been impertinent upon the part of the defendants to have, thereafter, offered to give any testimony as to the identity of the dam. This argument will not stand the test of a critical examination of the record. The extent of the ruling was that the former case had settled the question that there was a dam in Walker river at the time of the overflow.

This ruling was correct. The court did not decide that defendants could not offer any evidence as to the identity of the dam. If there was but one dam the defendants could not have contradicted McLeod's testimony by showing that there was no dam in the river at any particular time or at any given point, for the former adjudication settled the question that there was a dam in the river that had been constructed and maintained by the defendants for the purpose of diverting water into their ditch. If there were in fact two or more dams, then only one of them was in issue in the former suit, and the defendants were entitled to show, if they could— because the plaintiff had been allowed to introduce testimony upon this point—that the one alleged in the pleadings in this case was not the one adjudicated upon in the former action. After they opened their case, if they relied upon this point, they should have asked the question directly and met the issue fairly. Not having done so they are not in a position to complain.

3. It is next claimed that "the court erred in deciding that the height and character of the dam, in June and July, 1876, had been adjudicated in the case of *Lee et al.* v. *McLeod*;" and, in this connection, it is argued that the findings of the jury, in that case, as to the height and character of the dam, were void for uncertainty.

One of the questions involved in that action, as we have before stated, was as to the right of the plaintiffs therein to maintain a dam in the river, and the height and character of the dam was specially put in issue by the pleadings. The damages which the plaintiffs sought to recover were alleged to have been occasioned on or about the fourth day of August, 1876, by the enlargement of a ditch or cut by the defendant, McLeod, at a point about seventy-five yards above the dam, and the diversion of a portion of the waters of the river therein. McLeod, in his answer, claimed the right to construct the cut or ditch, and to divert the waters of the river therein for "the sole purpose of preventing the waters of said Walker river from overflowing" his land "and destroying the crops growing thereon." In his answer to the amended complaint he admitted that, after plaintiff's ditch was constructed, he consented that they "might put in a temporary dam or breakwater, not to exceed eighteen inches in height, and so constructed that said dam would wash down with any unusual high water, and upon the express condition that the said plaintiffs should become responsible to this defendant for any damages which might result from such temporary dam or breakwater going in; and that, in case of high water, the said plaintiffs should cut away said temporary dam and restore the channel to its natural condition;" and alleged that "*prior to the commencement of this action*, and at the time that said defendant made and constructed the cut," the plaintiffs had violated this consent and constructed a permanent dam six feet high, to his great and irreparable injury. This answer does not, as claimed by the defendant's counsel, limit the time to the fourth day of August, 1876, or admit "that the dam was of proper size and temporary character up to that time." The height of the dam in June and July, 1876, was within the scope of the pleadings, and was directly put in issue, and

was a material, relevant and important question to be decided in that action. There was no uncertainty as to the character of the dam which Lee and his associates had permission to construct. It was as definite as could be made. The "special findings of the jury" were referred to in the judgment, and it was by virtue of these special findings, as well as the general verdict, that the judgment in favor of McLeod was rendered.

In *Aurora City* v. *West*, the supreme court of the United States announces the general principles that are applicable to this case : "Where the parties are the same, the legal effect of the former judgment as a bar is not impaired, because the subject matter of the second suit is different, provided the second suit involves the same title, and depends upon the same question." (7 Wall. 96.)

Again : "Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judicatum*, and the former judgment in such a case is conclusive between the parties. Except in special cases, the plea of *res judicata*, says Taylor, applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." (p. 102.)

The estoppel " extends to every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause, and was determined in the course of the proceedings." (p. 103.)

The parties have had their day in court and have been heard upon these questions. They cannot reopen the subject and try the same questions over again. There must be an end of litigation.

4. The action of the court in relation to the question whether the cause of the overflow upon plaintiff's lands had been adjudicated in the former suit, and in permitting plaintiff

to reopen his case, was, in some respects, irregular; but the real question to be determined is whether the action of the court was prejudicial to the defendants.

The record shows that when the plaintiff opened his case he introduced two witnesses who testified that the dam was the cause of the overflow. He then rested his case, and the defendants introduced W. R. Lee as a witness, and asked him if he knew the cause of the overflow. Plaintiff objected to this question, upon the ground that it had been adjudicated in the former action, and the court sustained the objection. Subsequently the court made the following order: "When this case was on trial, before the adjournment, there were some objections made here, when the examination of Mr. Lee, a witness on the part of the defendants, in relation to his testifying what caused the overflow, the counsel for plaintiff contending that the former judgment operated as an estoppel, and that the defendant could not give any evidence in regard to that matter at all. At the time I had great doubt as to the correctness of the ruling of the court, and since that time I have examined the matter a little further, and upon further reflection I am of the opinion that the ruling of the court was erroneous. The objections heretofore sustained will be overruled, and the witness will be allowed to answer the question: The question is: State, then, if you know, what was the cause of the overflow."

The plaintiff then moved the court "for leave to reopen the case, and to submit further testimony on the part of the plaintiff in regard to the cause of the overflow of his land, upon the ground that the court has reconsidered its rulings upon the question which the plaintiff thought was *res judicata*." The defendants objected, "on the ground that the plaintiff had already introduced evidence upon that point." The court allowed the motion.

If the court erred in its first ruling that the former judgment had determined the cause of the overflow—a question which we are not called upon to decide—it had the right, and it was its duty, to correct it at the earliest opportunity.

The previous ruling, if erroneous, was cured by the subsequent ruling of the court, and it furnishes no ground for a

reversal of the judgment. (*Smith* v. *North American M. Co.*, 1 Nev. 429; *Menzies* v. *Kennedy*, 9 Nev. 159.)

If the second ruling was erroneous, then it becomes apparent that the defendants were not injured; because, if it were true that the cause of the overflow had been adjudicated in the former action, it was decided against them, and they should not be allowed to complain of a ruling that gave them another opportunity to contest the question; the error, if any, being in their favor.

If the plaintiff relied upon the former judgment as a bar, he ought not to have introduced any testimony upon this point. If he did not rely upon the former judgment, then he should have introduced all his witnesses before he closed his case. As a general rule, a plaintiff who has introduced witnesses in chief upon any given point, should produce all of his testimony upon that point before he closes his case. "Wherever," says Greenleaf, "the plaintiff is obliged to produce any proof in order to establish his right to recover, he is generally required to go into his whole case." (1 Green. on Ev. sec. 94.) But whether a plaintiff will be permitted to reopen his proof upon any particular point, is a question which rests very much in the discretion of the courts, and should always be decided with reference to the circumstances surrounding the case. The plaintiff should not be given any undue advantage contrary to the general rule. (*Kohler* v. *Wells, Fargo & Co.*, 26 Cal. 613; *Pinkham & McDonough* v. *McFarland*, 5 Cal. 137.) But when the plaintiff is acting in good faith, and the ends of justice require it, the case should be reopened. (*Lisman* v. *Early*, 15 Cal. 199; *Priest* v. *Union Canal Co.*, 6 Cal. 170; *State* v. *Murphy*, 9 Nev. 397; *McCausland* v. *Ralston*, 12 Nev. 202.)

In this case we do not think the court abused its discretion, and we are of opinion that the defendants could not have been misled to their prejudice by the rulings of the court.

5. It is argued by defendants' counsel that, inasmuch as the lands claimed by McLeod in the former action are not the same as in this, the court erred "in deciding that the issues in this case were the same as the issues in the former action respecting the ownership of the lands claimed by the defendant in

that action." A portion of the land described in this action is the same as in the former case. The complaint includes lands that were not embraced in the description in the former action.

This point seems to be made for the first time in this court, and it cannot, therefore, be considered. The statement on motion for a new trial does not affirmatively show that the court made any ruling to the effect that the ownership of the lands, described in the complaint in this action, had been adjudicated in the former suit. It does not set out all the evidence offered at the trial. It only purports to contain "all the testimony adduced on the trial * * * in anywise bearing upon the questions involved in the motion for a new trial in this action." This question was not involved in the motion for new trial. The point is not raised by the statement. The court did not decide that all "the issues in this case were the same as in the case of" *Lee* v. *McLeod,* and we have already noticed the points whether the court erred "in ruling that a part of the issues in this case had been adjudicated in the former suit." There are no other specific assignments of errors which relate to or raise the question respecting the ownership of the lands. The court, in its findings, declares "that plaintiff is now, and was at the times averred in the complaint, the owner in fee simple of all the real estate, land and premises described in his complaint in this action." The presumption is, in the absence of any showing to the contrary, that there was sufficient testimony introduced at the trial to sustain this finding.

6. Defendants argue that plaintiff contributed to the damage of his crops by his own negligence in opening, or carelessly leaving open, the McLeod ditch, and that the waters therefrom ran down to and upon the cultivated and grass lands of the plaintiff. The testimony that is contained in the statement does not show that the water from this ditch caused any damage whatever. It does not necessarily follow that growing crops are injured by an overflow of the land. It depends upon the character of the crops and the extent of the overflow. Grass lands and growing crops might be benefited by a slight overflow, or ruined by an extensive flood. To prove contributory negligence, so as to prevent a recovery by

plaintiff, it was necessary to show that his crops, or lands, were injured by the flow of water from the McLeod ditch. In other words, that his negligent act proximately contributed to the injury of which he complains. There is no testimony that goes to this extent, and we cannot presume, in opposition to the findings and judgment in this case, that the water from the McLeod ditch contributed to the damage to plaintiff's lands and crops. It is contended that if this view should be taken, then the plaintiff's whole case must fall to the ground, because the only testimony offered in his behalf was " that the dam caused the overflow of the lands in question," and there is no testimony " as to the effect produced by that overflow on the lands or crops of plaintiff." This is a correct statement of the testimony that appears in the record. But, as we have before stated, the statement does not purport to contain all the evidence.

No point is made in the statement on motion for new trial or in the assignment of errors, that there was no testimony to show that the damage to plaintiff's lands and crops was caused by the overflow of the waters of the river, or that the testimony was not sufficient to sustain the findings and judgment of the court, and upon this point, as well as the one previously discussed, we are bound to presume that there was evidence to sustain the findings of the court, which are clear, direct and explicit. The court found that the defendants, wrongfully, and without the consent of plaintiff, maintained a dam in Walker river in the months of June and July, 1876, and that by its construction and maintenance the natural flow of the waters of said river became filled up by the deposition of sand and other matter to such an extent as to overflow the natural banks of the river " and a portion of the lands of plaintiff, in the months of June and July, 1876, upon which, at such time, there were growing crops of grass, grain and potatoes of the value of two thousand seven hundred and ninety-nine dollars, and *that by such overflow* said crops were destroyed and said lands of plaintiff injured and destroyed to the extent of two hundred dollars." That the total damage " to the plaintiff from said overflow, *caused by the defendants*," is two thousand nine hundred dollars.

Complaint is made that there is no finding upon the question of contributory negligence. If defendants desired a specific "finding on this branch of the case," they should have asked the court for a finding upon this subject. (*Warren* v. *Quill*, 9 Nev. 259.) The testimony contained in the record, however, is not sufficient to justify a finding that the plaintiff, by his negligence, contributed to the damage, and this is, doubtless, the reason why the court "simply ignored it altogether."

7. When the defendant Lee was being examined as a witness, he testified that "there was a levee built around McLeod's house in 1868," and was asked whether he knew what the levee was built for. He answered: "Nothing more than I was told. * * * I can't say, unless it was to turn water from the house. * * * Mr. Snyder told me so. Mr. Snyder was the partner in the ranch at the time." The court, upon objection being made, said: "What Mr. Snyder told him will have to be stricken out." It is claimed that this ruling was erroneous. This was mere hearsay evidence. The statement that Mr. Snyder "was the partner in the ranch at the time," was too vague and indefinite to bind the plaintiff in this action. The declaration is not shown to have been made with reference to any matter within the scope of the partnership business. The court did not err in striking it out. (*Jones* v. *O'Farrell*, 1 Nev. 357.)

8. Finally, it is argued that the "evidence was insufficient to justify the decision of the court" that the dam was the cause of the overflow. Plaintiff introduced four witnesses who testified to this effect. Defendants introduced seven witnesses who testified to the contrary. Their testimony was to the effect that the plaintiff's lands were subject to overflow whenever there was a freshet in the river; that the lands were flooded in 1868 and 1872, before the dam in question was erected, and that the flood in 1876 was so great that the lands would have been flooded whether the dam was in the river or not.

It is argued that the question whether the dam was the cause of the overflow was "a mere matter of calculation," and that measurement of the ground, instead of opinion of

witnesses, should determine the question. It is claimed that the witnesses for the defendants testified to facts which clearly demonstrated that the dam was not the cause of the overflow; that the mere opinion of witnesses to the contrary did not raise a conflict of evidence, and that actual survey, measurement and science must govern the question. This ingenious argument of the able counsel who represented the defendants is much stronger in its general application to the question than are the facts upon which it is based, and with reference to which the question at issue must be determined.

The testimony as to the character of the measurements taken is thus given by the defendant Lee. In reply to the question, "What was the difference in the level of the water above and below the dam?" he said: "By an actual level made there, about sixty feet below the dam to sixty or eighty feet above, was eight inches and a half. I took the level with a spirit level and square. I waded out in the water up to my knees, and put the stakes down until I shoved them down with a level above; found it was correct, and called the attention of four or five persons present."

This witness also testified that he sailed over the dam in a flat boat, with a pole eight or ten feet long, and did not upset. "When I got under the willows * * * I put down the pole as far as I could, but could not find any bottom in the current of the stream."

The character of the measurements, taken, as they were, with a spirit level and square, in the river, amidst the eddying tide of the water and the drifting currents of the sand, could not, it seems to us, be any more certain or direct than the observations, judgments and opinions of witnesses who were well acquainted with the premises.

Upon examination of all the evidence we think the plaintiff's witnesses testified as positively, direct and certain as to the cause of the overflow as the witnesses on the part of defendants.

There being a conflict of evidence, we cannot disturb the decision upon this ground.

The judgment of the district court is affirmed.