BRIGHT et al. v. VIRGINIA & GOLD HILL WATER CO.

(Circuit Court of Appeals, Ninth Circuit. August 7, 1916.)

No. 2587.

1. WATERS AND WATER COURSES ⟨key⟩158½(1)—IRRIGATION CONTRACTS—ACTIONS—PLEADING—SUFFICIENCY.

Complaint alleging oral contract of plaintiff's predecessor in title to permit overflow of irrigation waters in consideration of right to use such waters, acted upon for over 40 years by expenditure of money in orchards, etc., and breach thereof by defendant who cut off the overflow when such waters were not needed elsewhere, is good as against demurrer, being based on cutting off overflow and not failure to divert waters so as to create an overflow.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. ⟨key⟩158½(1).]

2. WATERS AND WATER COURSES ⟨key⟩158(2)—IRRIGATION CONTRACTS—BREACH—LIABILITY.

Defendant who made oral contract giving plaintiff's predecessor of title right to use overflow waters in consideration of his permitting overflow on his land, could not, after 40 years of such use and expenditure of money in development of orchards, etc., cut off the water during irrigating season without becoming liable for consequent damages.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 187; Dec. Dig. ⟨key⟩158(2).]

In Error to the District Court of the United States for the District of Nevada; E. S. Farrington, Judge.

Action by Rose Bright and others against the Virginia & Gold Hill Water Company, a corporation. Judgment for defendant, on plaintiff's refusal to amend further after demurrer to the third amended complaint was sustained, and plaintiffs bring error. Reversed and remanded, with directions to overrule demurrer with leave to defendant to answer.

Sweeney & Morehouse, of Carson City, Nev., for plaintiffs in error.

Cheney, Downer, Price & Hawkins, of Reno, Nev., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The question in this case is whether or not the third amended complaint states a cause of action; the court having sustained a demurrer thereto and the plaintiffs declining further to amend. Judgment accordingly passed for the defendant. The plaintiffs thereupon sued out this writ of error.

In substance the allegations of the complaint are that during all of the times therein mentioned the defendant company was a California corporation engaged in business in Ormsby county, state of Nevada, "as a water company impounding, ditching, fluming, storing, and distributing water for the purposes of irrigation and domestic uses for pay," and that years before the plaintiffs in the action acquired their alleged interest in the land described in the complaint one Gara-

vanta was the owner thereof, onto and over which the defendant company permitted a part of the waters that it had by means of dams, ditches, flumes, and pipes diverted and impounded from Marlette Lake in Nevada, for mining, agricultural, and domestic uses, to overflow and wash and injure the said land of the said Garavanta and his crops thereon, by reason of which acts of the defendant company the said Garavanta prepared to bring suit against it for such injuries, whereupon he and the defendant company entered into an oral agreement to the effect that Garavanta would permit the overflow waters from the defendant company's works to flow to and across his said land during the whole time it should be engaged in furnishing water pursuant to its articles of incorporation, in consideration of which Garavanta and his successors in interest should have the right to divert such overflow waters and use the same to irrigate the said land—

"to the extent in which the said overflow water then and there ran, as long as said defendant was engaged in the business of its incorporation and conducted and carried on its said business as hereinbefore averred. And that the said Joe Garavanta, and his successors in interest, should have all of said overflow waters continuously and without interference, for the irrigation of the said lands and premises free of charge, *and the same should be permitted to overflow.*" (Italics ours.)

The complaint also alleges that in pursuance of that agreement and in consideration of the use of the overflow waters upon his land, Garavanta waived his right of action for damages for the injuries he had theretofore sustained from the overflow of such waters, and granted the defendant company a right of way therefor through his said land; that in pursuance of the alleged agreement Garavanta thereupon commenced the use upon his land of such overflow waters, irrigating not less than 100 acres thereof in the irrigating season during his ownership and occupancy of the land, which extended not less than 7 years, during which time he planted an orchard, vines, and various annual crops, expending in doing so large sums of money and much labor, by means of which the land was greatly increased in value; that at the end of about 7 years he sold the land to one Raffetto, from whom it passed by mesne conveyances to the plaintiffs in the action, together with the right to use the said overflow and waste waters.

The complaint further alleges:

"That since the aforesaid agreement down to and including the year 1913, and continuously, the said plaintiffs, their predecessors and grantors, in pursuance of said agreement have used the said overflow waters and the same have overflowed and continued to overflow, and the said defendant has permitted the same in harmony with said agreement to overflow, for the purposes of irrigation of said land and premises aforesaid."

That the land is arid and that crops cannot be grown thereon without irrigation, but that with irrigation large and valuable crops of various specified kinds can be, have been, and are being grown by the plaintiffs upon the land, and that all of the said overflow waters are necessary for its proper irrigation and cultivation, and that said waters—

"have been for more than 40 years last past, in pursuance of said understanding and agreement aforesaid, continuously used upon said lands for irrigation purposes with the full consent and knowledge of said defendant, and at all the times herein mentioned said overflow waters continued to overflow and were permitted to overflow by said defendant, and were not needed elsewhere or at all."

That in the year 1913 the plaintiffs planted upon the land various specified crops, and then had thereon various kinds of orchard trees of great value, necessarily expending in the cost of labor thereon $1,953.96, which crops so planted and cultivated were in good growing condition by reason of the use by the plaintiffs of the said overflow waters of which there was a plenteous supply with "no loss or reduction of the quantity of water for the uses and purposes of said defendant and to enable it to keep its agreement," and that defendant nevertheless on or about June 24, 1913, wrongfully and unlawfully "cut off, diverted, and stopped the said overflow of waters as aforesaid, and wholly deprived the said plaintiffs of the use thereof, in violation of its said agreement, during the cropping season" of the year named, thereby destroying the said crops, to the plaintiffs' damage in the sum of $14,823, for which, with costs, judgment is prayed.

The court below in sustaining the demurrer construed the complaint as being based upon an allegation that the defendant "failed to divert enough water from Marlette Lake to create an overflow and a waste which would run down to plaintiffs' premises."

[1, 2] But there is no such allegation in the complaint, nor any equivalent thereof. On the contrary, the allegations are in effect that the agreement between the defendant company and the predecessor in interest of the plaintiffs was that Garavanta should permit the overflow waters from the company's works to flow to and across his land during the whole time the company should be engaged in furnishing water pursuant to its articles of incorporation, in consideration of which Garavanta and his successors in interest should have the right to divert and use such overflow waters "continuously and without interference for the irrigation of the said lands and premises free of charge, and (that) the same should be permitted to overflow"; that the agreement was based upon a valid consideration, and that from the time it was made it was acted upon by Garavanta and his successors in interest, and that the plaintiffs were in the execution of the agreement by using such overflow waters from the defendant's works in the irrigation of their trees, vines, and growing crops when in the year 1913 the defendant company "diverted and stopped the said overflow of water."

Whether or not in the event that there existed no such overflow the defendant would be under obligation or liability to the plaintiffs is a question that does not arise at this time, but certainly if it be true as alleged that the defendant by agreement with the plaintiffs' predecessor in interest acquired the right to run its waste waters onto and through the land in question in consideration of the right on the part of the latter and his successors in interest to use such overflow in its irrigation, and that agreement, though oral, was regularly exe-

cuted for 40 and more years, and in the execution of which the plaintiffs and their predecessors in interest expended labor and money in the planting of trees, vines, and crops essentially dependent upon such waters for their successful growing, the defendant could not divert and stop such overflow in the midst of the irrigating season without becoming liable for the consequent damages; the said overflow waters, according to the allegations of the complaint, continuing to overflow and being permitted to overflow by the defendant and not being "needed elsewhere or at all."

In Lee v. McLeod, 12 Nev. 280, 285, the Supreme Court of that state, where the present case arose, said:

"The principle that expending money or labor in consequence of a license to divert a water course, or use a water power, in a particular way, has the effect of turning such a license into an agreement that will be enforced in equity, has been frequently announced by the courts. In all such cases the execution of the parol license supplies the place of a writing, and takes the case out of the statute of frauds. Woodbury v. Parshley, 7 N. H. 237, 26 Am. Dec. 739; Snowden v. Wilas, 19 Ind. 14, 81 Am. Dec. 370; Stephens v. Benson, 19 Ind. 369; Lane v. Miller et al., 27 Ind. 537; Raritan Water-Power Co. v. Vegthe, 21 N. J. Eq. 463; Rhodes v. Otis, 33 Ala. 578, 73 Am. Dec. 439; Campbell v. McCoy et al., 31 Pa. 264; Prince v. Case, 2 Am. Lead. Cases, 560, 561; Ameriscoggin Bridge v. Bragg, 11 N. H. 108.

The judgment is reversed and the cause remanded, with directions to the court below to overrule the demurrer with leave to the defendant to answer.