## STATE v. JAMES W. McCARTHY ET AL.

Argued December 14, 1907—Decided June 8, 1908.

Where a sheriff fails to summon a grand jury impartially as required by his oath of office, the court may, upon motion, quash an indictment found by such grand jury.

---

On motion to quash indictment.

Before Justices Swayze and Trenchard.

For the motion, *J. Merritt Lane.*

For the state, *William H. Speer.*

The opinion of the court was delivered by

SWAYZE, J.   The defendants were indicted at the Hudson Oyer and Terminer for conspiracy to obstruct a primary election by unlawfully arresting the election board.   The indictment has been brought to this court by *certiorari* and a motion made to quash because of partiality on the part of the sheriff in selecting the grand jury.

A similar question was presented in *Gibbs & Stanton* v. *State,* 16 *Vroom* 379.   In that case Chief Justice Beasley said: "That the prisoner, before he has pleaded, has the legal right to appeal to the discretion of the court to quash the indictment on account of the illegal composition of the grand jury, or of the misbehavior of the sheriff in selecting it, is everywhere admitted."   The only question which the court, composed at that time besides the Chief Justice, of Justices Depue, Van Syckel and Knapp, considered worthy of discussion was whether such an objection, which admittedly could be raised by an appeal to the discretion of the court on a motion to quash, could also be raised as a matter of legal right by a plea in abatement.   It was held that a motion to quash was the only method.   The decision was affirmed in the Court of Errors and Appeals on the opinion of the Supreme Court.   The defendants in the present case have followed the procedure there pointed out.   The learned Chief Justice cited no authority and thought his proposition too clear to require support.   A reference to the record of the case shows that it was thoroughly discussed at the bar, and that the objections to permitting an indictment to be questioned after it has been presented to the court were stated with great force and ability by Mr. Justice Magie in his opinion on the demurrer to pleas. All these objections were present to the mind of the court, and the opinion was the result of careful and deliberate consideration.   We are not at liberty at this late day to disregard a decision concurred in by so many eminent judges.   The remarks of the Chief Justice on this subject in that case have recently been criticised as having been unnecessary for the decision, and we have therefore thought it advisable to re-examine the question with the care which its importance de-

mands. As a result of that examination we think the views expressed are in accord with sound legal principles.

By our constitution no person can be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury. This must mean a legally constituted grand jury having the qualities which grand juries were required to have at the time the constitution was adopted, so far as those qualities are essential to secure the end of the protection of individual liberty. As was said by the Supreme Court of the United States in *Thompson* v. *Utah,* 170 *U. S.* 343, referring to the traverse jury: "It must consequently be taken that the word 'jury' and the words 'trial by jury' were placed in the constitution of the United States with reference to the meaning affixed to them in the law as it was in this country and in England at the time of the adoption of that instrument." Our own Court of Errors and Appeals, while conceding a right in the legislature to modify procedure in unessential matters, held that "the words 'trial by jury' import a trial by a jury of twelve men, impartially selected, who must unanimously concur in the verdict." *Brown* v. *State,* 33 *Vroom* 666, 678. The court was dealing only with the trial jury, but if the constitutional guarantee against prosecution for a criminal offence, except after indictment by a grand jury, is to be of any efficacy, it must be held to require such a grand jury in its essential qualities as existed when the constitution was adopted. The oath required to be taken by the sheriff indicates what is necessary in this respect. He is required to promise that he will truly, faithfully and impartially summon, impanel and return good and lawful men for jurors, able and sufficient and not suspected or procured. This oath dates from the act of March 18th, 1796 (*Pat. L., p.* 201, § 3), and in substance is to be found in the Colonial act of 21 *George II.* (1 *Nev.* 354). It had been upon the statute book for nearly a hundred years when the constitution was adopted. It can hardly be denied that if the grand jury is to serve its purpose of standing between the state and the citizen, it is essential that it should be impartially selected and not chosen for the purpose of securing indictments. If the

latter was to be permitted, the constitutional guarantee might as well be effaced. The very fact that the legislature has chosen to make the sheriff's oath specific in respect to all jurors is sufficient to demonstrate that no difference was intended between grand and petit jurors. A grand jury summoned and impaneled otherwise than impartially may be a grand jury in form and as to other persons concerned, but it is not a grand jury within the meaning of the constitutional provision as to the person who is the subject of the sheriff's hostility. That such a right as this will be protected by the courts was well established at the time of the Gibbs case by a decision of the United States Supreme Court growing out of the fourteenth amendment to the federal constitution. In *Neal* v. *Delaware,* 103 *U. S.* 370, it was found that, although by the constitution and laws of Delaware as construed by its courts under the fourteenth and fifteenth amendments, colored men were not excluded from service on grand juries, yet they were in fact excluded by the action of the jury commissioners, solely on account of their color. It was therefore decided that the defendant, a colored man, was entitled to have the indictment quashed. Later, in *Carter* v. *Texas,* 177 *Id.* 442, the state court upon a motion to quash had refused to hear evidence to prove that colored persons were excluded from service on the grand jury solely because of their color, and for this error the judgment was reversed. A similar result was reached in *Rogers* v. *Alabama,* 192 *Id.* 226. All were cases where the question arose upon a motion to quash.

The right of colored persons not to have men of their race excluded from service on grand juries solely on account of their color cannot be more important than the right of citizens of New Jersey not to be held to answer for a criminal offence unless upon indictment by a grand jury impartially summoned. The same arguments, *ab inconvenienti,* which are urged in the one case may be urged in the other. No doubt it is inconvenient to have a grand jury which may be competent to sit in all cases but those in which it may be incapacitated by the want of impartiality in the sheriff, but the same inconvenience must have arisen in the cases cited

from the United States Supreme Court. The serious character of the offences involved—rape and murder—did not deter that tribunal from protecting the constitutional rights of the citizens. The facts of this case ought not to deter us if a proper case is presented. It is no answer to say that the defendant cannot be injured as he has the opportunity to acquit himself before a traverse jury. If he is innocent, he is injured by having a tribunal, which the law has provided as a shield for his protection, used as a sword to smite him. If he is guilty, he is injured because he is deprived of a constitutional right. In either case the public is injured by the disregard of the safeguards which the law has provided against hasty or malicious action. It is trite to say that the worst excesses of revolutionary periods have been due to a disregard of legal safeguards in order to secure more speedily what a dominant party for the moment deemed to be justice. In this view it is not necessary to show that the members of the grand jury were also actuated by malice. What the law and the oath of the sheriff require is that he should act impartially in summoning, impaneling and returning the grand jury.

We think we are required therefore, not only by the decision of our own court, but by the most important and fundamental principles, to consider the merits of the present motion.

The case shows that the indictment grew out of a heated political conflict between two factions of the Republican party for the control of the primary election in September, 1907. The sheriff was chairman of the Republican county committee and as such the official head of the party. He was thereby empowered by law to choose the Republican members of each election board who alone were to conduct the Republican primary. The language testified to have been used by him and not denied, evinces great animosity toward the leaders of the other faction. One of those leaders was the mayor of Jersey City. The difficulty out of which this indictment grew arose out of the rejection by the election boards of voters who were afterward, by advice of counsel, allowed to vote. Upon this rejection of votes some of the police force of Jersey City,

apparently under the authority of the mayor, caused the arrest of election boards. The persons indicted include a police justice, the assistant corporation attorney of Jersey City, the president of the police board, the chief of police, an inspector, a justice of the peace and ten members of the police force. These circumstances are enough to show the difficulty which any political leader would have had under the circumstances to act impartially. The grand jury was impaneled just after the primary election. There seems to have been upon it not one man identified with the faction opposed to the sheriff. A large majority, more than enough to find an indictment, were identified with the sheriff's faction, some of them actively. One member was the former chief of police against whom the present chief of police had a few months before made charges which had resulted in his retirement from office, and he was so insensible to the obligation of his oath of secrecy that he consulted more than one outside counsel as to the very indictments now questioned.

It is, moreover, shown that since the present sheriff has been in office seven indictments against prominent city officials of Jersey City, connected with the faction opposed to the sheriff, have been found but never tried, the state having in each case entered a *nolle prosequi*. It was abuses of this character that in England brought about the act of 3 *Hen. VIII.*, *c.* 12, authorizing the court to reform the panel by taking out names and inserting others. 1 *Chit. Crim. L.* 310. These facts convince us that the sheriff did not act with the impartiality demanded by law, but rather as the leader of a political faction.

The motion to quash is ordinarily addressed to the discretion of the court, and it is upon this ground that the court sustained that procedure instead of the procedure by plea in abatement, which is more favored in other jurisdictions. Whether the court in the exercise of that discretion could refuse to grant the defendant's motion in view of the decisions of the United States Supreme Court above cited, is a question we do not feel called upon to decide. It is enough for our present purpose to say that we think no public neces-

sity requires that we should refuse in this case to exercise our discretion. There is still time for a properly chosen grand jury to act hereafter, and it is to the interest of public justice that the matter should be considered at a time when the passions of the moment shall have subsided, and that the defendants should not seem to be the victims of political animosity.

Let the indictment be quashed.