THE GOELLER IRON WORKS, PLAINTIFF AND APPELLANT, v. CHARLES H. CAREY, DEFENDANT AND APPELLEE.

Argued March 22, 1909—Decided September 15, 1910.

1. The title to "An act for the prevention of cruelty to animals" (*Gen. Stat., p.* 34), is sufficient to include those provisions in the act which provide for the disposition of animals upon which cruelty has been inflicted.
2. The statute provides that any animal in charge of a person arrested for cruelty to animals, if no one is present to take charge of the animal, may be delivered to certain persons to keep, and that all expenses for keeping shall be a lien upon the property, which lien may be enforced by a sale directed by an order of a magistrate, and upon notice directed by the magistrate. The order for sale is to be made upon application of certain persons, but no time is fixed within which the application or order shall be made. *Held*, that the failure to provide for a notice to the owner of the property of its custody, within a reasonable time, is a taking of property without process, as the sale may be indefinitely postponed without notice, and the value of the property destroyed by the expenses of keeping it before the owner can reclaim it.

On appeal from the First District Court of Newark.

Before Justices REED, TRENCHARD and MINTURN.

For the plaintiff and appellant, *Raymond, Mountain & Van Blarcom.*

For the defendant and appellee, *John A. Miller.*

The opinion of the court was delivered by

REED, J. The state of the case, signed by the respective attorneys, exhibits the following facts: An agent of the Society for the Prevention of Cruelty to Animals arrested one August Klink, a servant of the Goeller Iron Works, the plaintiff, for cruelty to an animal. At the time of his arrest, he was in charge of an animal belonging to the plaintiff, and neither the owner nor any employe of said owner other than Klink was present. The animal was turned over by the agent of the society to a police officer, and got rightfully into the possession of the defendant, who was holding it for the proper officer of the law, to whom it had been turned over by the agent of the society, as required in the provisions of an act of the legislature entitled "An act for the prevention of cruelty to animals." *Gen. Stat.*, p. 40, § 44.

The plaintiff made a demand in writing of the defendant, requiring the delivery to him of the animal, and the defendant refused to give it up unless the expenses which had been incurred for taking charge of and keeping the animal were paid. These expenses the plaintiff refused to pay, and brought the present action.

The defendant rested his right to the possession of the animal upon section 44 of the Cruelty to Animals act, already alluded to. The plaintiff admitted that if this section of the act was constitutional, the position of the defendant was lawful; but he challenged the constitutionality of that section, first, because it did not conform to the fourth paragraph of the second section of the fourth article of the constitution of the State of New Jersey, in that the title of the said act does

not express all the objects of the said act, and that the said forty-fourth section bears no proper relation to the other provisions of the act, and second, because the section was in violation of the fourteenth amendment of the constitution of the United States, in that it deprived the plaintiff of his property without due process of law.

The District Court declined to pass upon the constitutionality of the act, and decided that there was no conversion of the animal, and gave judgment for the defendant.

To intelligently appreciate the criticism of this section of the act, it seems essential that it should be set out literally. Section 44:

"That when any person or persons arrested under the provisions of the act for the prevention of cruelty to animals, or of any supplement thereto, shall at the time of such arrest be in charge of any animal or animals, with or without any vehicle attached, it shall be lawful (in case the owner of such property or any employe of said owner, other than the person arrested, be not then present), to consider and treat such animal or vehicle, with its contents, as if such animal or property were astray, or abandoned in a public place, and the same may be delivered to the local police or constabulary force, or some member thereof, whose duty it is hereby made to receive and take charge of the same; but in case no police officer or constable can be found, such duty may be undertaken and performed by any proper person, at the request of the person making such arrest; and all necessary expenses which may be incurred for taking charge of and keeping and sustaining such animal or property shall be a lien upon the same, and shall be paid and satisfied before the same can be lawfully reclaimed; which lien may be enforced by sale thereof at public vendue, upon order of the justice or court or magistrate before whom the party arrested shall have been brought, and at such reasonable time and by such suitable person as in said order shall be directed; and application for such order of sale may be made by the person or officer then having custody of said animal or property, or by the person who made the arrest; but before such sale may lawfully take

place the justice or court or magistrate aforesaid shall cause notice to be published in a newspaper circulating in the neighborhood in which said arrest was made, for at least three times if in a daily paper, or one time if in a weekly paper, stating the time and place of sale, the article to be sold, and the reason for selling the same, also the name of the owner if known; and the proceeds of sale so to be made shall be paid into court, and out of the same shall be satisfied all necessary expenses incurred as aforesaid, up to the time of said sale, together with costs as allowed by law in like cases or for like service, and the balance thereof shall be paid or disposed of as the right of ownership may appear; *provided always,* the property so advertised may be redeemed by the owner or owners at any time before said sale, upon payment of expenses and costs aforesaid."

As already observed, the first ground of attack upon this section is that the title has no relation to those sections of the act which provides for the punishment of those who shall be guilty of cruelty to animals. It certainly deals with the disposition of the animals upon which the cruelty has been inflicted. This section of the statute deals with the arrest of persons discovered in the act of abusing an animal. If he is arrested while in the actual charge of the animal, the question arises naturally out of the situation, "What is to be done with the animal?" If the owner is present, he can look after it. If an employe of the owner other than the one arrested is present, he can take charge of it; but if neither owner nor other servant is present, some other disposition must obviously be provided. The animal should not be turned at large. This would be a disadvantage to the owner of the animal, and would constitute a nuisance to the public of the neighborhood. Any legislative direction respecting the course to be taken with the animal arises naturally out of the arrest of the custodian of the animal, and such arrest springs out of his violation of the statute.

So it seems that the provisions of section 44 cannot be said to embrace an object other than and distinct from that expressed in the title of the statute.

The second question, and the more important one, is whether the statute deprives the owner of an animal of his property without due process of law. As already remarked, when speaking of the title of the act, when the person in charge of an animal is arrested, the disposition to be made of the animal is a natural subject of legislative direction. By the terms of the section under consideration, unless the owner of the animal, or some one of his employes other than the one arrested is present, the statute provides that such animal is to be regarded as an estray and abandoned in a public place.

The power of the legislature to declare certain kinds of property, and certain uses of property, or property in certain contingencies, to be a nuisance, is entirely settled. The power of the legislature to direct what disposition shall be made of such property for the purpose of abolishing the situation which constituted the nuisance, is also entirely settled.

The provision in the statute under review declaring that an animal without a custodian is to be regarded as an estray or a waif, is within the legislative power. That similar to an estray, such an animal can be impounded and sold, and the cost of its keeping deducted from the proceeds of the sale, and the balance turned over to the owner, there can be no doubt; and that this may all be done before the trial of the person arrested, so long as the statute does not strip the owner of the property of the right to sue for the act of an agent, is doubtless true.

These propositions are supported by the following cases: *Shivers* v. *Newton*, 16 *Vroom* 469; *Weller* v. *Snover*, 13 *Id.* 341; *Newark Horse Railroad Co.* v. *Hunt*, 21 *Id.* 318.

As to the latter point, in *Berry & Ackley* v. *De Maris*, 47 *Vroom* 301, while the power to destroy or sell property as a penalty was denied, the power to do so in certain instances, as a police regulation before trial, was recognized.

There is, however, a phase of the statute which we think exhibits an infringement of the rights of the owner of the property taken under the provisions of the act. This feature consists in the failure of the act to provide for an early actual

or constructive notice to the owner of the fact that his property has been taken in custody. If the power to arrest was confined to instances where the person arrested was the owner of the animal cruelly treated, or his servant, the provision of a notification to such owner might not be necessary; but under the provisions of the statute, the animal taken in custody may have been in the possession of a stranger to the owner.

The act provides for the sale of the impounded property, and for the payment of all expenses for keeping the property out of the proceeds of the sale, unless the property is reclaimed by the owner upon the payment of such expenses. The sale is to be upon notice, and so far the statutory provision is unassailable; and, as already remarked, the property so advertised may be redeemed by the owner or owners at any time before the sale, upon the payment of expenses and costs.

The statute, however, fixes no time when the order for the sale and for the notice of the sale shall be made. The statute only provides that the application for such order and sale may be made by the person or official then having possession of the property, or by the person who made the arrest. Within what period after the arrest this application shall be made, is not stated. Therefore, the property may be impounded for an indefinite period before it is ordered to be sold, and before there is any notice whatever to the owner. During this time, the value of the property is being destroyed by the expense of keeping it; and notice of the sale of the property provided by the statute becomes of little value to the owner, if the cost of such keep at the time of notice had practically absorbed the value of the property.

For this reason we think the failure of the statute to provide for a notice of some kind to the owner of the taking of the property, and of its place of custody, is a taking of property without due process of law.

For this reason we think there should be a reversal.